# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| ROCHELLE LINUS WASHINGTON ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KOCH FOODS OF GADSDEN, LLC,[1] ) <br> ) <br> Defendant. ) | Case No.: 1:16-cv-01100-SGC |

## MEMORANDUM OPINION AND ORDER[2]

This matter is before the court on the motion for summary judgment filed by Defendant, Koch Foods of Gadsden, LLC ("Koch Foods" or "Defendant"), on July 31, 2017. (Doc. 19). After the motion for summary judgment was filed, the court entered an order reminding the parties of the briefing deadlines set out in the Initial Order. (Doc. 22; *see* Doc. 12 at 4-6). Plaintiff, who is proceeding *pro se*, has not filed any response to the motion for summary judgment. Defendant filed a supplemental brief requesting that, in addition to the reasons set forth in its initial briefing, the motion for summary judgment be granted as unopposed. (Doc. 23). For the reasons discussed below, Defendant's unopposed motion for summary judgment is due to be granted.

---

[1] According to Defendant, it is incorrectly named in the amended complaint, and its proper legal name is Koch Foods of Gadsden, LLC. (Doc. 19 at 1 n.1). Accordingly, the Clerk is **DIRECTED** to amend the docket to reflect the defendant's correct legal name as Koch Foods of Gadsden, LLC.

[2] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 11).

## I. BACKGROUND AND RELEVANT FACTS

Plaintiff initiated this action with an application for leave to proceed *in forma pauperis*. (Doc. 1). Although the court allowed him to proceed without prepayment of costs, Plaintiff was ordered to file an amended complaint. (Doc. 3).

### A. Plaintiff's Allegations

In his amended complaint, Plaintiff alleges he was called "n----r" in 2014 by a superviser named Zack, which led to his filing a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). (Doc. 4 at 1). The charge was mediated, and although Plaintiff had been terminated, he was reinstated with back pay. (*Id*. at 1-2). Plaintiff returned to work for Defendant on April 9, 2015. (*Id*.).

Shortly after returning to work, Plaintiff saw Zack speaking with Plaintiff's new supervisor, Brandon. (*Id*.). After this encounter, Brandon began staring at Plaintiff. Brandon then "scream[ed]" at Plaintiff and "look[ed] at [him] in a mean way." (*Id*. at 2). Plaintiff alleges this does not happen to other employees. (*Id*.). On May 10, 2015, Plaintiff filed a second EEOC charge against Defendant. (*Id*.). This second charge resulted in another mediation, but the second mediation ended without the parties coming to any agreement. (*Id*. at 2).

After the second, unsuccessful mediation, Plaintiff alleges Brandon, like Plaintiff's prior supervisor, referred to Plaintiff twice as "n----r." (*Id*.). Plaintiff approached Cindy, the white female director of human resources, but she discouraged him from reporting the incidents with Brandon. (*Id*.). Cindy told Plaintiff he could "get in trouble by filing a false report." (*Id*.). Plaintiff filed an EEOC charge in connection with this incident on July 1, 2015. (*Id*. at 3). Plaintiff alleges the charge was to be mediated but Defendant's representative failed to attend the mediation. (*Id*.).

### B. **Defendant's Undisputed Statement of Facts**

Defendant asserts the following in its statement of undisputed facts. (Doc. 20 at 5-13). Defendant terminated Plaintiff on November 3, 2014, from his job on the production line because he accumulated too many points under the company's attendance policy. (*Id*. at ¶ 6). Defendant concedes Plaintiff has filed three separate charges of discrimination against it with the EEOC. (*Id*. at ¶ 11). The first, on November 10, 2014, resulted in Plaintiff being rehired and choosing an open position. (*Id*. at ¶ 13). That charge was settled; Plaintiff was reinstated and was employed by Defendant on the date the motion for summary judgment was filed. (*Id*. at ¶¶ 13-17).

Brandon Nichols was hired by Koch Foods on November 28, 2014. (*Id*. at ¶ 21). Though Plaintiff alleges Nichols was his superviser, Defendant states Plaintiff's "direct supervisor" was Tammy Ford. (*Id*. at ¶ 18). Nichols worked as a "lead" in the packing department with Plaintiff from April 9, 2015, until Nichols left the company on June 29, 2015. (*Id*. at ¶ 22).[3] Defendant states Nichols had no power to hire or terminate employees, assign job duties, or exercise supervisory authority over Plaintiff. (*Id*. at ¶ 25).

Plaintiff did not complain of Nichols's behavior to any employee of Defendant before filing a second EEOC charge on May 22, 2015. (*Id*. at ¶ 31). The incident at issue in Plaintiff's second charge was Nichols's having screamed at Plaintiff. The EEOC declined to investigate and, in its letter, told Plaintiff: "[T]here does not appear to be any evidence that you were subjected to objectionable or offensive treatment because you filed a charge of discrimination." (*Id*. at ¶ 32); (*see also* Doc. 21-2 at 89).

---

[3] In its brief, Defendant states Nichols and Plaintiff worked together during the year 2016, but the underlying affidavit and exhibits, as well as the context of Plaintiff's allegations, make clear the year was 2015. (*See* Doc. 21-1 at 4-6, 29-30).

On July 1, 2015, Plaintiff filed a third charge of discrimination with the EEOC, alleging he had been subjected to a racially hostile working environment. (*Id.* at ¶ 34). Plaintiff alleged that on June 25, 2015, Nichols stated to him, "N----r, put the trash in the back," while Plaintiff was putting trash away. (*Id.* at ¶ 35). Nichols called Plaintiff "n----r" again as Nichols was walking away. (*Id.*). Plaintiff reported these slurs to human resources manager Cindy DeBerry on June 26, 2015. (*Id.* at ¶ 37). DeBerry conducted an investigation, and Nichols denied the allegations. (*Id.* at ¶¶ 39-40). DeBerry counseled Nichols on Defendant's anti-harassment policy, "including the potential for termination if violated." (*Id.* at ¶ 41). In an affidavit attached to Defendant's brief, DeBerry states Plaintiff has received regular raises since he returned to work in April 2015. (Doc. 20-1 at ¶ 7).

The EEOC declined to pursue the third charge and informed Plaintiff: "[T]here does not appear to be any evidence that you were subjected to objectionable or offensive treatment because of your race . . ." and "it appears that although there were not any witnesses to the allegation of your charge, the employer took immediate corrective action." (Doc. 20. at ¶ 42). Plaintiff identified another witness to the EEOC but not to Defendant. After interviewing the additional witness, the EEOC issued a supplemental statement indicating the witness did not provide information in support of Plaintiff's claims. (*Id.* at ¶¶ 43-46). The EEOC issued a Dismissal and Notice of Right to Sue on April 13, 2016. (*Id.* at ¶ 47).

Plaintiff seeks compensatory damages in the amount of $10,743.00, plus an equal amount in punitive damages, for discrimination, retaliation, and harassment. (Doc. 4 at 3).

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.

R. CIV. P. 56(a). To demonstrate there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). When considering a summary judgment motion, the court must view the evidence in the record in the light most favorable to the non-moving party. *Hill v. Wal-Mart Stores, Inc.*, 510 F. App'x 810, 813 (11th Cir. 2013). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence.). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citation omitted).

### III. DISCUSSION

Defendant asserts no genuine issue of material fact exists for three reasons. First, regarding retaliation, Plaintiff has failed to offer evidence that any adverse employment action was taken against him. Because this is a prerequisite to recovery for a retaliation claim, Defendant contends it is entitled to judgment as a matter of law. Second, regarding Plaintiff's hostile work environment claim, Defendant contends he alleges only a single incident of harassment and, thus, has failed to show the kind of pervasive harassment which amounts to an

alteration in the terms and conditions of his employment. Finally, Defendant argues Plaintiff cannot show any causal connection between the harassment he complains of and any action taken by Defendant. Without causation, Defendant argues, it cannot be held liable for the actions of its employees. In addition to these arguments, Defendant asserts its motion should be granted as unopposed because the burden has shifted to Plaintiff to specifically identify disputed facts and support those disputes with references to the evidentiary record.

### A. Plaintiff's Failure to Respond

The court will first address Defendant's contention that it is entitled to summary judgment because Plaintiff has failed to oppose the motion. (*See generally* Doc. 23). Once the moving party properly supports its motion for summary judgment, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." (*Id.* at 2) (quoting *Int'l Stamp Art, Inc. v. United States Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir. 2006); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). This burden-shifting is in keeping with Rule 56(c)'s requirement that the non-movant assert a fact is genuinely disputed by citing to materials in the record. FED. R. CIV. P. 56(c)(1). Rule 56 further provides:

> If a party fails to . . . properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purpose of the motion [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show the movant is entitled to it.

FED. R. CIV. P. 56(e)(2)-(3). However, while Rule 56(c)(3) provides that "[t]he court need consider only the cited materials," it also provides that the court "may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

6

Here, Plaintiff was given an opportunity to dispute Defendant's assertions of fact but failed to do so. As required by Rule 56, the court has assessed Defendant's factual assertions in the light most favorable to Plaintiff as the nonmovant. This includes the court's consideration of evidence placed in the record by Defendant but not cited in Defendant's briefing. Following this assessment, the court finds certain facts are in dispute.

For example, the uncited materials reveal a dispute as to whether Nichols was aware of Plaintiff's previous protected activity. Specifically, Cindy DeBerry's notes reflect she interviewed Nichols on June 26, 2016. (Doc. 21-2 at 98). Nichols denied calling Plaintiff "the N word" but then said:

> That's not the first time he has done this - - - (He [ ] accused Zack of calling him the N-word)[.]
>
> When he came back to work here Tammy said he was in our dept. because he had accused Zack of calling him the "N word" and they could not work together . . . . . I'm pretty sure Zack said he had to go to court over it.

(*Id.*). Thus, the court finds DeBerry's notes, made during the course of her investigation, show Nichols knew of Plaintiff's previous complaints. That is, there is at least one disputed issue of fact. Accordingly, the court declines to grant Defendant's motion solely because Plaintiff has failed to respond.

Nevertheless, the burden remains on Plaintiff to show he can ultimately prevail. It is not sufficient for Plaintiff to demonstrate that Nichols had a retaliatory or discriminatory animus toward Plaintiff. Plaintiff must go further and show Nichols's retaliation could be imputed to Defendant or that discrimination by Defendant was so pervasive as to create a hostile working environment. For the reasons discussed below, the court concludes Defendant is entitled to judgment as a matter of law.

### B. Retaliation

To establish a claim of retaliation, a plaintiff must allege (1) he engaged in statutorily protected activity, (2) he suffered a materially adverse employment action, and (2) a causal relationship between the two events exists. *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008). For an employment action to be "materially adverse," an employee must show the employer's actions were harmful to the point they could well dissuade a reasonable worker from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). A "materially adverse employment action" may take the form of an ultimate employment decision, such as termination, failure to hire, or demotion. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). It may also take the form of a "serious and material change in the terms, conditions, or privileges of employment." *Id.* at 970-71. Such a change may be effected, for example, by a poor performance evaluation which leads to the denial of a pay raise. *Id*. (citing *Gillis v. Ga. Dep't of Corr.*, 400 F.3d 883 (11th Cir. 2005)).

Plaintiff cannot show a materially adverse employment action because, rather than being punished by Defendant as a result of his protected activity, Plaintiff has received at least one raise since returning to work in April 2015. (Docs. 20 at 17; 20-1 at ¶ 7). Certainly, it is possible for an employee to suffer discrimination in one form while being supported by his employer in other ways. However, in the context of Plaintiff's retaliation charge, the focus is on the employment consequences of Plaintiff's protected activity. Instead of representing a material change in the terms, conditions, or privileges of Plaintiff's employment, Nichols' conduct presents two incidents of offensive, but limited, conduct.

Further, Plaintiff has made no showing that Nichols's comments were encouraged or accommodated by Defendant. To the contrary, Nichols was admonished that the alleged

conduct, if confirmed, could result in Nichols being terminated. There is evidence in the record Nichols was aware of Plaintiff's protected activity, and thus, there is circumstantial evidence Nichols's comments may have been retaliatory. However, given Defendant's reaction to Plaintiff's complaint, Nichols's statements do not amount to conduct which can properly be imputed to Defendant. Therefore, Plaintiff has failed to show any causal connection between his protected activity and any adverse employment action taken by Defendant. Accordingly, Plaintiff has failed to establish a *prima facie* case of retaliation, and Defendant is entitled to summary judgment on this claim.

### C. Hostile Work Environment

To establish a hostile work environment on the basis of race, Plaintiff must show (1) he is a member of a protected class; (2) he was subjected to unwelcome racial harassment; (3) the harassment was based on his race; (4) the harassment was severe or pervasive enough to alter the terms and conditions of his employment and create a discriminatorily abusive working environment; and (5) the employer is responsible for the environment under a theory of either direct or vicarious liability. *Adams v. Austal U.S.A., L.L.C.*, 754 F.3d 1240, 1248-49 (11th Cir. 2014) (citing *Miller v. Kentworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)). Under the fourth element, the plaintiff must "subjectively perceive" the harassment as severe or pervasive enough to change the terms and conditions of employment, and this perception must be objectively reasonable. *McKitt v. Ala. Alcoholic Bev. Control Bd.*, 571 Fed. App'x 867, 873 (11th Cir. 2014) (quoting *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010)). The objective severity or pervasiveness of harassment "should be judged from the perspective of a reasonable person in the plaintiff's circumstances, considering all the

circumstances." *Id.* Further, hostile work environment claims are "based on the cumulative effect of individual acts." *Nat'l Ry. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).

The court need not question whether Plaintiff subjectively perceived Nichols's use of racial slurs as a severe form of "unwelcome racial harassment." The court will assume that he did perceive it as such; certainly, he would have been reasonable in doing so. However, considering all the circumstances, there is nothing in the record to suggest the harassment was "pervasive." When Plaintiff suffered similar harassment in 2014, his claim was taken up by the EEOC, and Defendant settled with Plaintiff. When Plaintiff complained of the conduct at issue here, which involved a different coworker, Defendant investigated, retrained, and admonished Nichols even though it was unable to substantiate Plaintiff's complaint.

Plaintiff's experience with Nichols, though clearly offensive, does not rise to the level of pervasiveness required for a hostile work environment claim. Though Plaintiff alleges Nichols used a racial slur twice, both comments were part of the same incident on the same date. Further, the facts about Nichols's conduct are viewed in light of other facts, such as the raises Plaintiff has received and Defendant's response to Plaintiff's complaints. Taken together, the facts in evidence do not present the kind of cumulative effect of individual acts which amount to severe and pervasive harassment of the kind that would alter the terms and conditions of Plaintiff's employment. Therefore, Plaintiff has failed to establish he was subjected to a hostile work environment. Accordingly, Defendant is entitled to summary judgment on this claim as well.

## IV. CONCLUSION

Although there is evidence of a retaliatory comment by one employee, Plaintiff has failed to create a genuine dispute as to whether he suffered a materially adverse employment action in

connection with his EEOC charges. Therefore, he has failed to present a *prima facie* case of retaliation. Further, Plaintiff has failed to establish a causal connection between the conduct he complains of and Defendant's actions or policies and, thus, has also failed to create a genuine issue of fact as to his hostile work environment claim. Accordingly, the motion for summary judgment (Doc. 19) is due to be granted, and Defendant is entitled to judgment as a matter of law on all of Plaintiff's claims.

A separate order of judgment will be entered.

**DONE** this 6th day of December, 2017.

_____
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE